A

Abraham Lincoln
15 0123456

# ® ◼️ LINCOLN NATIONAL
# LIFE INSURANCE CO.

## A part of LINCOLN NATIONAL CORPORATION

### (A STOCK COMPANY)

We have issued this Policy to You in consideration of the full first premium and the statements made in Your application. A copy of the application is attached to and is a part of this Policy.

We agree to pay You the benefits provided in this Policy for loss due to an Injury or Sickness that begins while this Policy is in force.

**NONCANCELLABLE AND GUARANTEED RENEWABLE TO AGE 65.** You may continue this Policy to Your 65th birthday by payment of the premium on each renewal date. We cannot cancel this Policy. As long as the premium is paid on time, We cannot change this Policy or its premium rate until Your 65th birthday.

**RENEWAL OPTION AFTER YOU REACH AGE 65.   SUBJECT TO CHANGE IN PREMIUM RATES.** You may renew this Policy as long as You are actively and regularly employed on a full time basis; there is no age limit. You must pay premiums on time at Our premium rates then in effect at time of renewals. For further details, see the Renewal Option provision.

**READ THIS POLICY CAREFULLY.** This is a legal contract between You and The Lincoln National Life Insurance Company.

**RIGHT TO RETURN THIS POLICY WITHIN 20 DAYS.** This Policy may be returned, within 20 days after its receipt, to the agent through whom it was purchased or to Our Home Office. Upon cancellation, We will refund any premium paid and this Policy will be void from the beginning.

Signed for The Lincoln National Life Insurance Company at its Home Office in Fort Wayne, Indiana.

Jon A. Boscia, President

Cynthia A. Rose, Secretary

Examined by

Countersigned by

_____

_____

Disability Income Insurance Policy
Noncancellable to Age 65
Nonparticipating - No Dividends.

N400MD



DUPLICATE

## Table of Contents

**No Table of Contents Present**

ONAME IN ABC

N400MO

DUPLICATE

Disability Income Insurance Policy
Noncancellable to Age 65
Nonparticipating – No Dividends

If you have any questions concerning this Policy or if
anyone suggests that you change or replace this Policy,
please contact your Lincoln National Life agent or the
Home Office of the Company.

# THE LINCOLN NATIONAL
# LIFE INSURANCE COMPANY

### 1300 South Clinton Street
### P.O. Box 1110
### Fort Wayne, Indiana 46801



**LINCOLN NATIONAL
LIFE INSURANCE CO.**
A part of LINCOLN NATIONAL CORPORATION

N400MD

DUPLICATE

POLICY SCHEDULE

| | |
|---|---|
| INSURED: STEPHEN A DRAZIN | POLICY NUMBER: 15 6132309 |
| AGE: 26 | RATE CLASS: 9A* |
| DATE OF ISSUE: AUGUST 24, 1994 | BILLING: DIRECT BILL |

PREMIUM DUE DATES AND AMOUNTS

PREMIUM PAYMENT INTERVAL ELECTED -   ANNUAL

BEGINNING ON AUGUST 24, 1994

| TOTAL ANNUAL PREMIUM | TOTAL SEMIANNUAL PREMIUM | TOTAL MONTHLY PREMIUM |
|---|---|---|
| $1,441.00 | $735.51 | $124.79 |

IF YOU ARE ELIGIBLE TO RENEW THIS POLICY AFTER AGE 65, RATES WILL BE THOSE IN EFFECT AT THE TIME OF RENEWALS.

NOTE: RENEWAL OF COVERAGE BEYOND AGE 65 MAY REQUIRE AN INCREASE IN THE RENEWAL PREMIUM AFTER AGE 65.

PAGE 3

DUPLICATE

## POLICY SCHEDULE

INSURED: STEPHEN A DRAZIN

POLICY NUMBER: 15 6132309

AGE: 26

RATE CLASS: 4A*

DATE OF ISSUE: AUGUST 24, 1994

BILLING: DIRECT BILL

PERSONAL DISABILITY INCOME FROM LINCOLN - BASIC BENEFIT ONE

ELIMINATION PERIOD                 180 DAYS

TOTAL DISABILITY MONTHLY BENEFIT:
```
  DUE TO INJURY ........................... $3,750
  DUE TO SICKNESS STARTING:
  BEFORE AGE 56 ........................... $3,750 FOR LIFETIME
  AT AGE 56 BUT BEFORE AGE 57 ............. $3,750 TO AGE 65 ... $3,375 THEREAFTER
  AT AGE 57 BUT BEFORE AGE 58 ............. $3,750 TO AGE 65 ... $3,000 THEREAFTER
  AT AGE 58 BUT BEFORE AGE 59 ............. $3,750 TO AGE 65 ... $2,625 THEREAFTER
  AT AGE 59 BUT BEFORE AGE 60 ............. $3,750 TO AGE 65 ... $2,250 THEREAFTER
  AT AGE 60 BUT BEFORE AGE 61 ............. $3,750 TO AGE 65 ... $1,875 THEREAFTER
  AT AGE 61 BUT BEFORE AGE 62 ............. $3,750 FOR 48 MONTHS $1,500 THEREAFTER
  AT AGE 62 BUT BEFORE AGE 63 ............. $3,750 FOR 42 MONTHS $1,125 THEREAFTER
  AT AGE 63 BUT BEFORE AGE 64 ............. $3,750 FOR 36 MONTHS $750 THEREAFTER
  AT AGE 64 BUT BEFORE AGE 65 ............. $3,750 FOR 30 MONTHS $750 THEREAFTER
  AT OR AFTER AGE 65 ...................... $3,750
```

MAXIMUM BENEFIT PERIOD FOR TOTAL DISABILITY OR
PRESUMPTIVE TOTAL DISABILITY STARTING:
```
  BEFORE AGE 65                       LIFETIME
  AT OR AFTER AGE 65 BUT BEFORE AGE 75   24 MONTHS
  AT OR AFTER AGE 75                  12 MONTHS
```

ANNUAL BASIC BENEFIT PREMIUM  $1,186.15  UNTIL AGE 65

BENEFITS PROVIDED BY RIDER FOR BASIC BENEFIT

|  | RIDER ANNUAL PREMIUM |
|---|---|
| OPTION TO INCREASE MONTHLY BENEFIT<br>TOTAL AMOUNT OF OPTIONS: $5,250 | $ 160.65 |
| RESIDUAL DISABILITY BENEFIT RIDER | $ 167.94 |
| EXTENDED OWN OCCUPATION | INCLUDED ABOVE |
| COST OF LIVING ADJUSTMENT - 5% SIMPLE | INCLUDED ABOVE |

PREMIUMS ON PAGE 3 INCLUDE A VOLUME DISCOUNT

PAGE 3A


DUPLICATE



## POLICY SCHEDULE

| | |
|---|---|
| INSURED: STEPHEN A DRAZIN | POLICY NUMBER: 15 6132309 |
| AGE: 26 | RATE CLASS: 4A* |
| DATE OF ISSUE: AUGUST 24, 1994 | BILLING: DIRECT BILL |

---

### AUTOMATIC BENEFIT INCREASE - BASIC BENEFIT

THIS BENEFIT PROVIDES FOR 5 AUTOMATIC INCREASES OF $190.00 EACH IN THE TOTAL DISABILITY MONTHLY BENEFIT SHOWN ON PAGE 3A, SUBJECT TO CERTAIN LIMITATIONS. THE INCREASES WILL OCCUR ONCE A YEAR OVER A TERM OF 5 YEARS. WE WILL NOT REQUIRE ANY EVIDENCE OF INSURABILITY FOR THE INCREASES TO TAKE EFFECT. THE INCREASES WILL BE EFFECTIVE ON THE DATES SHOWN BELOW.

EACH AUTOMATIC INCREASE IN BENEFIT WILL RESULT IN AN INCREASE IN THE PREMIUM FOR THE POLICY. A RESIDUAL DISABILITY BENEFIT RIDER, A COST OF LIVING RIDER, OR AN EXTENDED OWN OCCUPATION RIDER MAY BE ATTACHED TO THIS POLICY. IF SO, THE PREMIUM FOR EACH RIDER WILL INCREASE EACH TIME THE BENEFIT UNDER THE POLICY INCREASES. PREMIUM FOR EACH INCREASE ARE BASED ON YOUR ATTAINED AGE ON THE INCREASE DATE AND ARE SHOWN BELOW. IF ALL INCREASES GO INTO EFFECT, YOUR ANNUAL PREMIUM WILL INCREASE BY A TOTAL OF $341.83     BY THE LAST INCREASE DATE.

| INCREASE DATE | INCREASE IN ANNUAL PREMIUM |
|---|---|
| AUGUST 1995 | $64.22 |
| AUGUST 1996 | $66.17 |
| AUGUST 1997 | $68.13 |
| AUGUST 1998 | $70.09 |
| AUGUST 1999 | $73.22 |

AN AUTOMATIC INCREASE IN BENEFIT WILL APPLY ONLY TO A DISABILITY WHICH STARTS AFTER THE INCREASE DATE. IT WILL NOT APPLY TO A RECURRENT DISABILITY. IF THE PREMIUM FOR THIS POLICY IS BEING WAIVED UNDER THE WAIVER OF PREMIUM PROVISION, THE PREMIUM FOR THE INCREASE WILL ALSO BE WAIVED. WHEN YOU RESUME PAYING PREMIUMS FOR THE POLICY, YOU MUST ALSO PAY PREMIUMS FOR THE INCREASE.

IF DURING THE 5 YEAR TERM YOU APPLY FOR AN INCREASE IN THE TOTAL DISABILITY MONTHLY BENEFIT WHICH REQUIRES THAT YOU FURNISH EVIDENCE OF INSURABILITY SATISFACTORY TO US, ANY REMAINING PORTION OF THE TERM WILL END AND A NEW TERM BASED ON THE NEW LEVEL OF POLICY BENEFIT WILL BEGIN.

YOU MAY REFUSE AN AUTOMATIC INCREASE IN BENEFIT BY NOTIFYING US IN WRITING 30 DAYS PRIOR TO THE INCREASE DATE OF YOUR INTENT TO REFUSE. YOUR REFUSAL OF AN INCREASE WILL NOT AFFECT THE INCREASES FOR THE REMAINDER OF THE 5 YEAR TERM. HOWEVER, IF YOU REFUSE THE FIRST TWO INCREASES, ALL FURTHER INCREASES WILL BE CANCELLED AND THE TERM WILL END.

YOU MAY APPLY FOR ADDITIONAL AUTOMATIC BENEFIT INCREASES AT THE TIME OF THE LAST INCREASE DATE. TO APPLY FOR THE INCREASES, YOU MUST COMPLETE AN APPLICATION WE WILL SEND YOU UPON REQUEST, AND FURNISH EVIDENCE OF INSURABILITY SATISFACTORY TO US. APPLICATION MUST BE MADE WITHIN THE TIME PERIOD STARTING 60 DAYS PRIOR TO AND EXTENDING TO 30 DAYS AFTER THE LAST INCREASE DATE.

AUTOMATIC INCREASES IN BENEFIT ARE NOT AVAILABLE AFTER YOUR 60TH BIRTHDAY.

PAGE 3B


DUPLICATE

# DEFINITIONS

THE FOLLOWING DEFINITIONS ARE IMPORTANT IN DESCRIBING YOUR RIGHTS AND OUR RIGHTS UNDER THIS POLICY. DEFINED TERMS ARE CAPITALIZED. REFER TO THESE DEFINITIONS AS YOU READ THE POLICY.

"You" and "Your" refer to the insured named on the Policy Schedule.

"We," "Our," and "Us" mean The Lincoln National Life Insurance Company. We are located at 1300 South Clinton Street, Fort Wayne, IN 46801.

"Date of Issue" is the date this Policy becomes effective. It is shown on the Policy Schedule.

"Elimination Period" is the number of days, beginning with the day Your Period of Disability starts, for which no Disability Benefits are provided. It is shown on the Policy Schedule.

"Maximum Benefit Period" is the longest period of time We will pay Disability Benefits for any one Period of Disability. It is shown on the Policy Schedule.

"Sickness" means a sickness or disease that first appears (makes itself known) while this Policy is in force. It includes disability from transplant surgery where You are a donor, or cosmetic surgery, if such transplant or cosmetic surgery takes place more than 6 months after the Date of Issue of this Policy.

"Injury" means an accidental bodily injury that occurs while this Policy is in force.

"Occupation" means the occupation (or occupations, if more than one) in which You are engaged at the start of Your disability.

"Physician" means a licensed medical practitioner practicing within the scope of his or her license. A Physician must be someone other than You or a family member.

"Physician's Care" means treatment by a Physician which is appropriate for the condition causing the disability and is consistent with prevailing medical standards.

"Total Disability", before benefits have been paid for 24 months for a Period of Disability, means that due to Injury or Sickness:

a. You are unable to perform the substantial and material duties of Your Occupation; and

b. You are under a Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

After benefits have been paid for 24 months for a Period of Disability, Total Disability means that due to Injury or Sickness:

a. You are unable to perform the substantial and material duties of Your Occupation;

b. You are not engaged in any other gainful occupation; and

c. You are under a Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

"Period of Disability" means continuing periods of Total Disability. Successive Periods of Disability will be deemed to be continuing if they are:

a. due to the same or related conditions; and

b. separated by no more than 12 months;

otherwise such periods will be deemed to be new and separate disabilities.

"Disability Benefit" means the Total Disability Benefit.

"Pre-existing Condition" means a Sickness or physical condition for which, prior to the Date of Issue:

a. symptoms existed that would cause an ordinarily prudent person to seek diagnosis, care, or treatment; or

b. medical advice or treatment was recommended by or received from a Physician.

# BENEFITS

**Total Disability Benefit.** You must be Totally Disabled for the entire Elimination Period. The Total Disability Monthly Benefit shown on the Policy Schedule will be paid thereafter while Your Total Disability continues.

Disability Benefits are not payable for days of disability which occur before the end of the Elimination Period. Disability Benefits will not be paid beyond the Maximum Benefit Period. For periods of Total Disability of less than one month, We will pay 1/30th of the monthly benefit for each day of disability.

**Survivor Benefit.** If You die while receiving benefits under this Policy and if You were Totally Disabled for at least 24 months prior to Your date of death, We will pay a benefit to Your beneficiary, or Your estate if a beneficiary has not been named. We will pay the Total Disability Monthly Benefit for up to three months, but not beyond the remainder of the Maximum Benefit Period.

We must receive written notice of Your death before We will pay this benefit.

**Presumptive Total Disability.** If Injury or Sickness causes You to entirely and permanently lose:

a. Your speech; or

N400NMD


DUPLICATE

b. Your hearing in both ears; or

c. Your sight in both eyes; or

d. use of both hands; or

e. use of both feet; or

f. use of one hand and one foot;

We will consider You to be Totally Disabled even if You are able to engage in an occupation. Further care and treatment by a Physician is not required.

This benefit will be paid in accordance with the Total Disability provisions of this Policy. Benefits will begin on the date of loss, however, if earlier than the date the Disability Benefit would otherwise begin. We will pay this benefit for the Maximum Benefit Period specified for Presumptive Total Disability. This benefit will be paid in lieu of all other benefits under this Policy.

**Waiver of Premium.** After Your Period of Disability has lasted for 90 days, We will:

a. refund any premiums that became due and were paid during this 90 day period; and

b. waive the payment of any premiums that become due thereafter while Your Period of Disability continues.

The premium to be waived will be the premium according to the mode of premium payment in effect when Your Period of Disability starts.

Once Your Period of Disability ends, this Policy can be kept in force by paying any premiums that become due.

**Rehabilitation.** We will pay for the cost of services You incur during a Period of Disability in connection with a program of vocational rehabilitation if:

a. We enter into an agreement with You on both the program and the services; and

b. the cost of the services is not covered by another plan or program.

Participation in such a program will not affect Your eligibility for benefits under this Policy.

## EXCEPTIONS

**Exclusion.** We will not pay benefits:

a. due to an act of war, whether declared or undeclared; or

b. for any period You are incarcerated; or

c. due to normal pregnancy or childbirth, except We will pay Disability Benefits for a disability caused by:

  1. complications of pregnancy or childbirth; and

  2. normal pregnancy or childbirth, starting on the later of the 91st day of Your Period of Disability or the day of Your Period of Disability which immediately follows the Elimination Period.

N400NMD

**Pre-existing Condition Limitation.** If a Period of Disability starts within 2 years from the Date of Issue, and is due to a Pre-existing Condition, Disability Benefits will not be paid unless the condition:

a. was disclosed and not misrepresented on Your application; and

b. is not excluded by name or specific description.

**Suspended Coverage While In Military.** This Policy will be suspended if and when You enter active military service. This suspension applies to the military service of any country or international authority, but does not apply to active duty for training that lasts less than 60 days. Any premium paid beyond the date of suspension will be refunded. Upon Your release from full time active duty prior to age 65, You may put this Policy back in force without evidence of insurability. We will need written notice and payment of the required premium within 90 days of Your release from full time active duty. The premium will be at the same rate as if this Policy had not been suspended. The premium will be payable upon Your receiving written notice from Us giving the amount of premium and the period such premium will provide coverage under this Policy. The restored policy will cover only loss that results from an Injury that occurs after the restoration date, or Sickness that first appears more than 10 days after such date.

## RECURRENT AND CONCURRENT DISABILITY

**Recurrent Disability.** We will treat a new Period of Disability as a recurrence of a prior disability if:

a. it is due to the same or related conditions; and

b. it occurs within 12 months after the end of the prior Period of Disability.

Such periods of recurrent disability will be used to determine completion of the Elimination Period.

**Concurrent Disability.** If Your Period of Disability is caused by more than one Injury or Sickness, or from both, benefits will be paid as if it was caused by only one Injury or Sickness.

## RENEWAL OPTION

This Policy may be renewed after Your 65th birthday for the Total Disability Benefit provided:

a. You remain actively and regularly employed for at least 30 hours each week excluding Periods of Disability; and

b. premiums are paid on time.

This Policy must be in force when You elect this option.

If this Policy is renewed after Your 65th birthday, only continuous days of Total Disability can be used to satisfy the Elimination Period.


DUPLICATE

The Maximum Benefit Period for renewals on or after your 65th birthday is shown on the Policy Schedule. We have the right to require proof from time to time that You are actively and regularly employed at least 30 hours each week.

All other provisions, limitations, and exclusions in this Policy will continue to apply.

Premiums will be based on the table of rates in effect for people also insured under this type of policy who are the same age and in the same class as You at renewal. This Policy will terminate on the premium due date following the date You cease to be actively and regularly employed for at least 30 hours each week, subject to the terms of the Time of Disability provision. Any premium You may pay for a period after this Policy terminates will be returned to You.

## CLAIMS

**Time of Disability.** Termination of this Policy will not affect any claim for benefits if Your Period of Disability begins while this Policy is in force.

**Notice of Claim.** Written notice of claim must be given to Us within 20 days after a covered loss starts, or as soon thereafter as is reasonably possible. The notice can be sent to Our Home Office in Fort Wayne, Indiana or can be given to Our agent. There is no required form, but the notice should include Your name and the policy number.

**Claim Forms.** After We receive the written notice of claim, We will send You forms for filing proof of loss. If You do not receive these within 15 days, You will meet the proof of loss requirements by giving Us a written statement of the nature and extent of the loss within the time limit stated in the Proof of Loss provision.

**Proof of Loss.** If this Policy provides periodic payments for a continuing loss, written proof of loss must be given to Us within 90 days after the end of the period for which We are liable. For any other loss, written proof of loss must be given to Us within 90 days after such loss. If it was not reasonably possible to give written proof in the time required, We will not reduce or deny the claim for this reason if such proof is given to Us as soon as reasonably possible. In any event, written proof must be given to Us no later than 1 year from the time specified unless You were legally incapacitated.

**Physical Examination.** At Our expense, We have the right to have You examined as often as reasonably necessary while Your claim continues.

**Time of Payment of Claims.** After receiving written proof of loss:

a. We will immediately pay all benefits then due which are not payable periodically; and

N400NMO

b. We will pay at the end of each 30 days any benefits due that are payable periodically, subject to continuing proof of loss.

**Payment of Claims.** All benefits will be paid to You. If, however, any benefit is payable to Your estate or if You are not competent to give valid release, We can pay benefits up to $1,000 to one of Your relatives whom We consider to be entitled to the benefits. We will be legally discharged to the extent of any such payment made in good faith.

## PREMIUMS

**Premium Payments.** The first premium is due on the Date of Issue. Each premium after the first premium is due at the end of the period for which the preceding premium was paid.

The first premium is payable at Our Home Office or may be delivered to any authorized representative of the Company. Each premium after the first premium is payable only at Our Home Office. Checks for premium payments should be made payable to The Lincoln National Life Insurance Company.

The premium payment interval is shown on the Policy Schedule. The interval may be changed as provided by Our rules, except it may not be changed during a Period of Disability.

**Grace Period.** This Policy has a 31 day grace period. This means that if a premium is not paid on or before the date it is due, it may be paid during the following 31 days. This Policy will continue in force during the grace period.

**Reinstatement.** If this Policy lapses due to nonpayment of premium, it will be reinstated if We or Our agent accepts payment of the unpaid premium without requiring an application for reinstatement.

If We or Our agent requires an application for reinstatement, You will be given a conditional receipt for the premium submitted with the application. If We approve Your application, this Policy will be reinstated effective the date We approve reinstatement. If We approve or disapprove Your application, We must do so within 45 days of the date of the conditional receipt, or this Policy will be reinstated on the 45th day.

The reinstated policy will only cover loss due to:

a. injury sustained after the effective date of reinstatement; or

b. Sickness that begins more than 10 days after such date.

In all other respects, Your rights and Our rights will remain the same as before the policy lapsed, subject to any provisions made a part of the reinstated policy.

DUPLICATE

Any premium We accept for reinstatement will be applied to a period for which premiums have not been paid.

**Refund of Premium After Death.** Any premium paid for a period beyond the date of Your death will be refunded to Your beneficiary, or to Your estate if a beneficiary has not been named.

## THE CONTRACT

**Entire Contract; Changes.** The entire contract consists of:

a. this Policy;

b. the application and any supplemental application;

c. any riders; and

d. any amendments.

We have issued this Policy to You in consideration of the first premium and the statements made in Your application.

A change in this Policy will be binding on Us only if the change is in writing and the change is made by one of Our officers. Any change must be made a part of this Policy. Our agents cannot make changes and cannot waive any policy provision.

Whenever any term shown on the Policy Schedule appears in the text of this Policy, it refers to the time, date, or amount shown for that term.

**Effective Date.** This Policy goes into effect at 12:01 A.M. on the Date of Issue, provided it has been delivered, all supplements have been signed, and the first premium has been paid prior to any disability of the Insured and prior to any change in health or any other factor affecting the insurability of the Insured as shown in the application. It continues in force until 12:00 midnight on the next premium due date. All

times are Standard Time at the place You then reside.

**Incontestable.** No claim for loss incurred or disability that starts after 2 years from the Date of Issue will be reduced or denied because a Sickness or physical condition existed before the Date of Issue unless it is excluded by name or specific description.

After this Policy has been in force for 2 years from the Date of Issue, excluding any Period of Disability, We cannot contest the statements in the application.

**Legal Action.** No legal action may be brought to recover on this Policy within 60 days after written proof of loss has been given as required by this Policy. No such action may be brought after 3 years from the time proof of loss is required to be given.

**Misstatement of Age.** If Your age has been misstated, the benefits under this Policy will be those the premium paid would have purchased at Your correct age. If We accepted any premium which falls due on a date when, on the basis of Your correct age, this Policy would not have been issued or coverage would have ceased, Our liability will be limited to a refund of such premium.

**Conformity With State Statutes.** Any provision in this Policy which, on its Date of Issue, is in conflict with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

**Assignment.** No assignment of this Policy or the assignment of any claim will be binding on Us until it is filed with Us at Our Home Office. We will assume no responsibility for the validity or sufficiency of any assignment.

**Nonparticipating.** This Policy is issued on a nonparticipating basis and will not share in Our surplus earnings.

N400NMD


DUPLICATE

# RESIDUAL DISABILITY BENEFIT RIDER

## DEFINITIONS

"Monthly Income" means Your salary, wages, commissions (first year and renewal), bonuses, fees, and all other income earned for services performed. If You own any portion of a business or profession, it also includes:

a. Your share of the income earned by that business or profession; minus

b. Your share of business expenses which are deductible for federal income tax purposes; plus

c. Your salary and any contributions to a pension or profit sharing plan made on Your behalf.

It does not include income from:

a. rent royalties, annuities, investments; or

b. deferred compensation plans, disability income plans, retirement plans; or

c. any other income not derived directly from Your work activity.

Monthly income will be accounted for on a cash basis. Income accrued but not yet received before the start of Your Period of Disability will be excluded from Your Monthly Income during that Period of Disability.

"Prior Monthly Income" is the greater of:

a. Your average Monthly Income during the 12 months just prior to the start of Your Period of Disability; or

b. Your highest average Monthly Income for any 2 successive calendar years during the five year period just prior to the start of Your Period of Disability.

On the first anniversary of Your continuous Total or Residual Disability, and on each subsequent anniversary of such disability, We will increase Prior Monthly Income by 5% of (a) or (b), whichever is greater.

"Current Monthly Income", before benefits have been paid for 24 months for a Period of Disability, means the Monthly Income from Your Occupation. After benefits have been paid for 24 months for a Period of Disability, Current Monthly Income means the Monthly Income from any occupation in which you are engaged.

"Loss of Earnings" means Your Prior Monthly Income minus Your Current Monthly Income.

"Residual Disability", during the Elimination Period, means that due to Injury or Sickness:

a) You are either:

1) unable to perform one or more of the substantial and material duties of Your Occupation; or

2) unable to work at Your occupation for more than 80% of the time You normally worked prior to Your Period of Disability; and

b) You are under a Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

Following the Elimination Period, Residual Disability means that due to the continuation of that Injury or Sickness:

a) Your Current Monthly Income is 80% or less of Your Prior Monthly Income; and

b) You are under a Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

"Return To Work" means a period which begins prior to Your 65th birthday during which:

a. You incur a Loss of Earnings which follows Total or Residual Disability; and

b. The Loss of Earnings is due to the prior Injury or Sickness which caused the Total or Residual Disability; and

c. You are working full time in Your Occupation. "Full time" means at least as many hours as You were working before Your Disability began.

"Residual Maximum Benefit Period" means the Maximum Benefit Period for Total Disability shown on the Policy Schedule.

"Period of Disability" is modified to mean continuing periods of Total Disability, Residual Disability and/or Return To Work. Successive Periods of Disability will be deemed to be continuing if they are:

a. due to the same or related conditions; and

b. separated by no more than 12 months;

otherwise such periods will be deemed to be new and separate disabilities.

"Disability Benefit" is modified to mean the Total Disability Benefit, Residual Disability Benefit and/or Return To Work Benefit.

All of the other definitions in this Policy apply to this Rider.

## BENEFITS

Residual Disability Benefit. Your Period of Disability must last for the entire elimination Period. The amount to be paid while Your Residual Disability continues is determined monthly and equals:

$$\frac{\text{Loss of Earnings}}{\text{Prior Monthly Income}} \times \frac{\text{Total Disability}}{\text{Monthly Benefit}}$$

RJ400MD

DUPLICATE

Residual Disability Benefits are not payable:

a. for days of Residual Disability which occur before the end of the Elimination Period; or

b. for any days for which Total Disability benefits are paid; or

c. for any Residual Disability starting after Your 65th birthday; or

d. after the end of the Residual Maximum Benefit Period; or

e. beyond the later of:

   1) Your 65th birthday; or

   2) the date on which 24 months of Disability Benefits have been paid.

The Residual Disability for which claim is made must be the cause of Your Loss of Earnings.

For periods of Residual Disability of less than one month, We will pay 1/30th of the monthly benefit for each day of disability.

The first six monthly payments for a Residual Disability will never be less than 50% of the Total Disability Monthly Benefit shown on the Policy Schedule. In the event Your Current Monthly Income is 25% or less of Your Prior Monthly Income, We will consider Your Current Monthly Income to be zero.

**Return To Work Benefit.** We will pay a Return To Work benefit during Your Return To Work. The monthly amount We pay will be calculated as if You were Residually Disabled.

This benefit will begin on the day after Your Total or Residual Disability ends. We will continue to pay this benefit while Your Return to Work continues, but not beyond the end of the period for which Residual Disability Benefits would be payable.

**Benefit Periods.** The combined periods for which Total Disability Benefits, Residual Disability Benefits, and Return To Work Benefits are payable for a disability (including any Recurrent Disability) cannot exceed the Residual Maximum Benefit Period.

**PROOF OF LOSS**

In addition to the requirements set forth in the Proof of Loss provision of this Policy, We can also require reasonable proof from You of Your:

a. Prior Monthly Income; and

b. Current Monthly Income for the month for which disability is claimed.

This may include personal and business tax returns, financial statements, accountant's statements, or other proof acceptable to Us. At Our expense, We can have an audit performed as often as is reasonably required while Your claim continues.

**GENERAL PROVISIONS**

This Rider is attached to and is a part of this Policy.

The Date of Issue of this Rider is the same as the Date of Issue of this Policy unless a different Date of Issue for this Rider is shown on the Policy Schedule.

The premium for this Rider is shown on the Policy Schedule. It is payable on the dates, in the manner, and under the conditions specified in this Policy.

The premium for this Rider is shown on the Policy Schedule. It is payable on the dates, in the manner, and under the conditions specified in this Policy.

This Rider terminates:

a. upon Your written request; or

b. on Your 65th birthday; or

c. when this Policy terminates;

whichever occurs first.

Unless changed by this Rider, all provisions, exclusions, and limitations in this Policy apply to this Rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*Cynthia A. Rose*

Cynthia A. Rose, Secretary

Countersigned by:

_____

**DUPLICATE**

# OPTION TO INCREASE BENEFIT RIDER

## DEFINITIONS

"Option Date" means any anniversary of the Date of Issue.

"Rider Basic Benefit" means the Basic Benefit which is set forth on the same Policy Schedule page that also shows this Rider as a benefit.

"Rider Basic Benefit Amount", as used in this Rider, means the Total Disability Monthly Benefit shown on the Policy Schedule for the Rider Basic Benefit, adjusted for all prior increases and decreases.

"Total Amount of Options" means the Total Amount of Options for the Option To Increase Benefit Rider shown on the Policy Schedule for the Rider Basic Benefit.

All of the other definitions in this Policy apply to this Rider.

## BENEFITS

You have the right on each Option Date to increase the Rider Basic Benefit Amount. You may do so without providing medical evidence of insurability. To apply for an increase, You must complete an application which We will send You upon request. Application must be made within 31 days prior to or after the applicable Option Date. You must then pay the increased premium within 31 days after the Option Date.

The amount of any increase will be subject to all of the following conditions:

1. An increase, when combined with all disability income coverage then in force with Us and any other insurer or government agency, may not exceed the amount We would issue to You as a new applicant. This amount will be subject to Our published issue and participation limits on the day You apply for an increase, or on the Date of Issue of this Policy, whichever results in a higher amount.

2. After Your 46th birthday, an increase cannot exceed 1/3rd of the Total Amount of Options, rounded to the next $10.00.

3. The total of all increases may not exceed the Total Amount of Options.

You can apply for an increase on any Option Date, even if You are disabled at that time. For purposes of financial underwriting. We will consider Your annual rate of earned income to be that which You had when the Period of Disability started. Increases We approve, up to 10% of the original Total Amount of Options, will apply to the benefits payable while that Period of Disability continues. These increases, plus any increases We approve in excess of 10%, will also apply to new Periods of Disability.

Any increase in coverage will be effective on the Option Date resulting in that increase. Any exclusions or limitations which apply to the Rider Basic Benefit Amount will also apply to any increase.

The premium for each increase will be based on Your attained age on the effective date of the increase. It will also be based on:

a. Our premium rates in effect at the time of the increase or on the Date of Issue, whichever is less; and

b. Your occupational class at the time of the increase or on the Date of Issue, whichever will produce the lower premium.

When an Option to Increase is exercised, the premium for this Rider will be reduced. The new premium will be based on the Total Amount of Options remaining.

## GENERAL PROVISIONS

This Rider is attached to and is a part of this Policy.

The Date of Issue of this Rider is the same as the Date of Issue of this Policy unless a different Date of Issue for this Rider is shown on the Policy Schedule.

The premium for this Rider is shown on the Policy Schedule. It is payable on the dates, in the manner, and under the conditions specified in this Policy.

This Rider terminates:

a. upon Your written request; or

b. on the anniversary of the Date of Issue next following Your 52nd birthday, except that such termination will not affect any right to purchase granted as of that anniversary; or

c. when the total of all increases equals the Total Amount of Options; or

d. when this Policy terminates;

whichever occurs first.

RF400MD

**DUPLICATE**

Coverage will terminate at 12:00 midnight on any given termination date. Unless changed by this Rider, all provisions, exclusions, and limitations in this Policy apply to this Rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*Cynthia A. Rose*

Cynthia A. Rose, Secretary

Countersigned by:

_____

RF400MD

DUPLICATE

# EXTENDED OWN OCCUPATION BENEFIT RIDER

### DEFINITIONS

The policy to which this Rider is attached is amended by replacing the definition of Total Disability with the definition shown below.

"Total Disability" means that due to Injury or Sickness:

a.  You are unable to perform the substantial and material duties of Your Occupation; and

b.  You are under a Physician's Care. We will waive this requirement if We receive written proof acceptable to Us that further Physician's Care would be of no benefit to You.

A Residual Disability Benefit Rider may be attached to this Policy. If so, the definition of Current Monthly Income in the Residual Disability Benefit Rider is modified to mean the Monthly Income from Your Occupation during any month for which Residual Disability is being claimed.

All of the other definitions in this Policy apply to this Rider.

### GENERAL PROVISIONS

This Rider is attached to and is a part of this Policy.

The Date of Issue of this Rider is the same as the Date of Issue of this Policy unless a different Date of Issue for this Rider is shown on the Policy Schedule.

The premium for this Rider is included in the premium shown on the Policy Schedule for this Policy.

This Rider terminates:

a.  upon Your written request; or

b.  when this Policy terminates;

whichever occurs first.

Coverage will terminate at 12:00 midnight on any given termination date. Unless changed by this Rider, all provisions, exclusions, and limitations in this Policy apply to this Rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*Cynthia A. Rose*
Cynthia A. Rose, Secretary

Countersigned by:

_____

RA400

**DUPLICATE**

## COST OF LIVING ADJUSTMENT RIDER - 5% SIMPLE

### DEFINITIONS

"Benefit Period", as used in this Rider, means the Maximum Benefit Period which is shown on the same Policy Schedule page that also shows this Rider as a benefit.

"Benefit Amount", as used in this Rider, means the Total Disability Monthly Benefit amount which is shown on the same Policy Schedule page that also shows this Rider as a benefit.

All of the other definitions in this Policy apply to this Rider.

### BENEFITS

A cost of living adjustment will be made to increase the benefits payable during Your Period of Disability. The adjustment will start on the 366th day of Your Period of Disability and will be made if:

a. Your Period of Disability lasts more than 365 days; and

b. a Disability Benefit is payable under this Policy.

The adjustment to Your Total Disability Monthly Benefit will be calculated by multiplying the Benefit Amount by an Adjustment Factor. The Adjustment Factor changes each year on the anniversary of the date Your Period of Disability started. The Adjustment Factor for the year starting on the 1st anniversary of Your Period of Disability is 1.05. On each subsequent anniversary, the Adjustment Factor is determined by adding .05 to the Adjustment Factor for the previous year. However, the Adjustment Factor will not be increased after You attain age 65. The new benefit amount is called the Adjusted Total Disability Monthly Benefit. This adjusted benefit will be paid until the next anniversary of Your Period of Disability, at which time a new Adjusted Total Disability Monthly Benefit will be calculated.

A Social Insurance Benefit Rider may be attached to this Policy. If so, We will also adjust the benefits payable under that rider. We will do this by multiplying the Social Insurance Benefit for the Benefit Period by the appropriate Adjustment Factor.

We will adjust Your Disability Benefit until:

a. Your Period of Disability ends; or

b. the end of the Benefit Period;

whichever occurs first.

### RIGHT TO INCREASE MONTHLY BENEFIT

Once You return to active and full time work after the end of a Period of Disability during which a benefit was paid under this Rider, You may increase the Benefit Amount. You may increase it up to the Adjusted Total Disability Monthly Benefit used to determine Your last claim payment, excluding any portion resulting from the Social Insurance Benefit Rider.

To qualify for this increase, You must:

a. be under age 60 on the date You elect the increase; and

b. confirm in writing that You are actively and gainfully employed on a full time basis. No other evidence of insurability is required.

To apply for this increase, You must complete an application which We will send You upon request. Application must be made within 90 days after the end of Your disability.

The effective date of the increase in the Benefit Amount will be the first of the month next following the date We approve Your application. You must then pay the increased premium within 31 days of that date. The amount of the increase in premium will be based on Our current rate table at the time of the increase and will reflect Your attained age at that time. The increase in Benefit Amount will only apply to new Periods of Disability which start after the effective date of the increase.

If You do not apply for and obtain this increase in benefit, the Total Disability Monthly Benefit shown on the Policy Schedule will apply to any new Periods of Disability.

### GENERAL PROVISIONS

This Rider is attached to and is a part of this Policy.

The Date of Issue of this Rider is the same as the Date of Issue of this Policy unless a different date of Issue for this Rider is shown on the Policy Schedule.

The premium for this Rider is included in the premium for this Policy shown on the Policy Schedule.

RC400MO

DUPLICATE

This Rider terminates:

a. upon Your written request; or

b. on Your 65th birthday; or

c. when this Policy terminates;

whichever occurs first.

Coverage will terminate at 12:00 midnight on any given termination date.

Unless changed by this Rider, all provisions, exclusions, and limitations in this Policy apply to this Rider.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

*Cynthia A. Rose*

Cynthia A. Rose, Secretary

Countersigned by:

_____



DUPLICATE

RC400MD



# LINCOLN NATIONAL LIFE INSURANCE CO.

A part of LINCOLN NATIONAL CORPORATION

June 25, 1997

Stephen A Drazin
Drazin & Drazin
10915 Swansfield Rd
Columbia MD 21044

Policy Number 15-06132309

**Option Date: 08/24/97**

Dear Policyowner:

The above option date marks a very important day for you and Lincoln Life. For the past twelve months, we have had the privilege of providing you quality income protection. This protection would pay you a guaranteed income should you become sick or hurt and unable to work.

Your income may have increased this past year and your disability plan is designed to keep pace by providing a 5% Automatic Benefit Increase. Because of this special feature, 08/24/97 is also when Lincoln Life will automatically increase your base monthly benefit from $4130.00 to $4320.00. For this additional coverage, your new Annual premium will be $ 1,639.52, an increase of only  $68.13.

This increase will occur automatically and without proof of insurability. If you wish to decline the added income benefit, please sign the lower portion of this letter and return it in the envelope provided 30 days prior to your option date. You may also fax your signed declination to a Life and DI Customer Service Consultant at 219-455-7471.

Your agent is aware of this Automatic Benefit Increase and is ready to answer any questions you may have; or, you may call your Life and DI Customer Service Consultant at 1-800-348-0851.

Policy Change Unit
Life and DI Customer Service

Agent Name: Peter O Maller - 2004

---

DECLINE NOTICE: Automatic Benefit Increase Rider

POLICY NUMBER:  15-06132309

**I DO NOT** wish to increase my Monthly Income Benefit on 08/24/97

Date                          Policyowner Signature

_____          _____

RETURN TO:
LINCOLN LIFE INSURANCE COMPANY
Policy Change Unit
Life and DI Customer Service
PO Box 7825
Fort Wayne In  46897-1093



**DUPLICATE**

DI1

 

## Addition to Pending Application to
## The Lincoln National Life Insurance Company

(1) Except as noted below, all answers given to a Medical Examiner for the *PROVIDENT LIFE & ACCIDENT INS. COMPANY* on *APRIL 19*, 19*94* are accurate as recorded on the forms of such company, and I agree that such answers shall be construed as if made to a Medical Examiner for The Lincoln National Life Insurance Company, Fort Wayne, Indiana ("Lincoln") and may be relied upon by Lincoln.

(Note exceptions here. Please identify medical condition, examining physician and dates of treatment or diagnostic testing.)

(2) I hereby authorize any physician or other person who has attended, treated or examined me, or who may hereafter do so, to disclose to Lincoln any information relating to me.

(3) I have neither suffered the symptoms of nor been treated for illness or injury, and no insurer has declined, postponed, rated or charged an extra premium for any insurance relating to me since the date of my application to *PROVIDENT LIFE & ACCIDENT INS CO* Nor have I changed my occupation, income or residence during that time.

(4) I agree that the answers referred to in (1), above, as recorded on the forms of the *PROVIDENT LIFE & ACCIDENT INS. CO.* shall be incorporated in Part I of the Lincoln application dated _____. 19_____, as if they had been originally set forth therein.

(5) It is understood that Lincoln does not waive any of its underwriting requirements by reason of anything stated above.

X Dated at *Howard County, IND.* this *14th* day of *MAY*, 19 *94*

X _____     X *5/12/94*
Signature of Proposed Insured          Date

_____          _____
Signature of Applicant                    Date
(If other than Proposed Insured)

_____
Witness

Policy Number _____

Form 21025 10/83

DUPLICATE
TOTAL: P.02

**LINCOLN NATIONAL LIFE INSURANCE CO.**
Agent LINCOLN NATIONAL CORPORATION.
Fort Wayne, Indiana 46801

**APPLICATION FOR DISABILITY INCOME INSURANCE**

6132309
655

Part One

PLEASE PRINT

| 1. (a) Name | (Last) DRAZIN | (First) STEPHEN | (Middle Initial) A | (b) Social Security Number 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 |
|---|---|---|---|---|

| 2. (a) Birthplace (State) MD | (b) Date of Birth (Month) 10 (Day) 8 (Year) 67 | (c) Age 26 | (d) Sex ☒ Male ☐ Female |
|---|---|---|---|

3. (a) Residence Address (Street) 7200 Cralkstona Ct. (City) ~~Unit 1 Academy Gt #84~~ BALTO (State) MD (Zip) 21209

(b) Business Address 10915 SWANSFIELD RD    COLUMBIA    MD    21044

(c) Name of Employer DRAZIN & DRAZIN   PA    (d) Number of Employees 3

4. Send Premium Notices to: ☐ Residence Address ☐ Business Address ☐ Other (Specify in Special Requests)

5. (a) Occupation: ATTORNEY    (b) How long:

(c) Exact Duties: TRIAL WORK SPECIALTY    in present occupation? 6 MOS

with current employer? 6 MOS

(d) Are you currently working full time in this occupation? (30 hours or more per week) Yes ☒ No ☐

(e) Percent of time traveling as part of occupation? 5% or less

(f) Are you working in any other occupation? Yes ☐ No ☒ (If yes, give details)

6. Earned Income is the total of your annual salary or wages, commissions, fees, and contributions to pension or profit sharing plans, reduced by your regular business expenses, but before all other deductions.

(a) Current annual Earned Income $ 75,000    (b) Prior year annual Earned Income $ 35,000

(c) If a change in Earned Income of more than 20%, please give details PASSED BAR IN DECEMBER OF 1993

(d) Total unearned income (dividends, interest, etc.) if exceeded $10,000 for the prior calendar year $_____

7. Does your net worth exceed $2,500,000? Yes ☐ No ☐ If "Yes," state current value:

Cash, Savings, Stocks & Bonds $_____  Personal Property $_____  Business $_____

Personal Residence $_____  Other Real Estate $_____  Other $_____

8. (a) Do you have or are you applying for other disability coverage: (1) Individual, (2) Association; (3) Employer Sick Pay, (4) Group (maximum benefit available), (5) Overhead Expense, (6) Buy/Sell, (7) Key Person? Yes ☒ No ☐ If "Yes," give details in 8(c).

(b) Is the policy applied for intended to replace any existing disability coverage? Yes ☒ No ☐ If "Yes," give details in 8(c) including the date premiums are paid to, and submit the appropriate replacement forms with this application.

(c) TOTAL DISABILITY COVERAGE IN FORCE OR APPLIED FOR ON PROPOSED INSURED

| Company or Source of Coverage | Policy Number | Type (1–7) | Year of Issue | Monthly DI Amount | Benefit Period | Coverage to be Replaced? | Paid to Date of Coverage |
|---|---|---|---|---|---|---|---|
| Provident | Applied | on | 3/30/94 | | | Yes ☒ No ☐ | N/A |
| | | | | $ | | Yes ☐ No ☐ | |
| | | | | $ | | Yes ☐ No ☐ | |

(d) MUST be completed for DI DEFENDER:

(1) What type of group disability or early retirement disability benefits are you eligible to receive? _____

(2) How many sick days have you accumulated? _____

9. Does any of the above disability coverage include a Social Security supplement? Yes ☐ No ☒

DUPLICATE

Amount _____ Company _____

Form 7500-13  12/92

...have you used tobacco in any form within the last 12 months? (If "Yes," give details below.)   Yes ☒  No ☐

11. (a) Name and address of your regular doctor(s) or medical facility? *COLUMBIA MEDICAL PLAN*
*2 KNOLL NORTH DRIVE   COLUMBIA MD   21045*

(b) Date and reason for last consultation(s) *1988 CHECK UP*

_____

_____

12. In the past 7 years have you:

(a) (1) engaged in, or contemplate engaging in, aviation, ballooning, parachuting, hang gliding, vehicle racing, skin or scuba diving? (If "Yes," complete appropriate form.)   Yes ☐  No ☒

(2) engaged in any other sports or avocation not mentioned in (1) above?   Yes ☐  No ☒

(b) (1) been convicted of driving while intoxicated, or been convicted of a crime, or received advice, counseling or treatment, as a result of the use of alcohol? (If "Yes," complete appropriate form.)   Yes ☐  No ☒

(2) used, or received advice, counseling, or treatment for the use of, or been convicted for the use or possession of, any narcotic, stimulant, sedative, or hallucinogenic drug? (If "Yes," complete appropriate form.)   Yes ☐  No ☒

(c) (1) been diagnosed or treated by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)? (If "Yes," give details.)   Yes ☐  No ☒

(2) tested positive to antibodies to the AIDS virus? (If "Yes," give details.)   Yes ☐  No ☒

(d) ever been declined, postponed, rated or had a policy modified for Life or Health insurance? (If "Yes," give reason.)   Yes ☐  No ☒

13. Do you have any intention of traveling or living outside the USA or Canada in the next two years, for more than 30 days?   Yes ☐  No ☒

**QUESTIONS 14 THROUGH 18 NEED NOT BE ANSWERED IF A MEDICAL EXAM IS BEING FURNISHED**

14. Height _____ ft. _____ in. Weight _____ lbs.  *EXAM ATTACHED*
Have you lost more than 10 pounds in weight in the past year? (If "Yes," give amount and cause below.)   Yes ☐  No ☐

15. Do you have an impairment or deformity, or receive treatment or take medication of any kind?   Yes ☐  No ☐

16. Have you within the past 7 years, been treated for or ever had any known indication of:

(a) high blood pressure, chest pain, diabetes, arthritis, epilepsy, headaches, dizziness, cancer, tumor, hernia, or disease or disorder of the ears, eyes, throat or speech? (Circle the applicable items.)   Yes ☐  No ☐

(b) stress, anxiety or any mental, emotional or nervous disorder, or received counseling for these conditions? (If "Yes," give details below.)   Yes ☐  No ☐

(c) disease or disorder of the neck, back, spine, heart, lungs, or circulatory, digestive, respiratory, urinary or reproductive system? (Circle the applicable items.)   Yes ☐  No ☐

17. Have you lost any time from work during the past 2 years due to Sickness or Injury?   Yes ☐  No ☐

18. Have you within the past 5 years consulted with or been treated by any physician, practitioner or chiropractor for any causes not named above?   Yes ☐  No ☐

Give details for all "Yes" answers to questions 10, 12-18. Include diagnosis, dates, physicians and addresses. _____
*10) CURRENTLY SMOKES CIGARETTES*

_____

_____

_____

_____

_____

_____

DUPLICATE

**19. Plan Information**

### (a) Personal Disability Income from Lincoln

Benefit Periods Available:  6 mo, 1 Yr, 2 Yr, 5 Yr, To Age 65, Lifetime

Elimination Periods Available (days):  30, 60, 90, 180, 365, 730

| Basic Benefit One: | Basic Benefit Two: | Basic Benefit Three: |
|---|---|---|
| Benefit Amount $ _3,750_ | Benefit Amount $_____ | Benefit Amount $_____ |
| Benefit Period _LIFETIME_ | Benefit Period _____ | Benefit Period _____ |
| Elimination Period _180_ | Elimination Period _____ | Elimination Period _____ |

Optional Benefit Riders

Social Insurance Rider:

Benefit Amount $_____    ☑ Residual Rider    ☑ Extended Own Occupation

Benefit Period _____    COLA: Simple ☑ 5% ☐ 10%   Compound ☐ 5%

Elimination Period _____

Option to Increase (Amount) $_____    Option to Convert 5 Yr Benefit (Amount) $_____

Return of Premium ☐ 20%  ☐ 50%    Other Optional Benefit Riders (List) _____

Type of Premium ☑ Level   ☐ Step Rate    _____

### (b) DI Defender

Benefit Periods Available:  1 Yr, 2 Yr, 5 Yr, To Age 65

Elimination Periods Available (days):  30, 60, 90, 180, 365

Basic Benefit:    Optional Benefit Riders:

Benefit Amount $_____    ☐ Own Occupation Rider    ☐ Residual Benefit Rider

Benefit Period _____    ☐ Presumptive Disability    ☐ Lifetime Benefits

Elimination Period _____    ☐ COLA    Option to Increase (Amount) $_____

### (c) BOE (Please complete Form 10486.)

Benefit Periods Available (months):  6, 12, 18, 24

Elimination Periods Available (days):  30, 60, 90

Basic Benefit:    Optional Benefit Riders:

Benefit Amount $_____    ☐ Residual Rider

Benefit Period _____    Option to Increase (Amount) $_____

Elimination Period _____    Salary Reimbursement Rider:

Benefit Period (3, 6, or 12) _____

Elimination Period (30, 60, 90) _____

### (d) Buy/Sell (Please complete Form 19424.)

Benefit Periods Available (months):  Lump Sum, Periodic (12, 24, 36, 48, 60)

Elimination Periods Available (months):  12, 18, 24, 36

| Basic Benefit Lump Sum: | Basic Benefit Periodic: | Optional Benefit Rider: |
|---|---|---|
| Benefit Amount $_____ | Benefit Amount $_____ | Option to Increase (Amount) |
| Elimination Period _____ | Benefit Period _____ | $_____ |
|  | Elimination Period _____ |  |

Owner of Policy _____

### (e) Key Person

Benefit Periods Available (months):  6, 12, 18

Elimination Periods Available (days):  30, 60, 90, 180

Basic Benefit:    Optional Benefit Riders:

Benefit Amount $_____    Option to Increase (Amount) $_____

Benefit Period _____    Replacement Expense Benefit Rider (Amount) _____

Elimination Period _____    Owner of Policy _____

DUPLICATE

20. Premium information (check the appropriate boxes)

(a) Paid by: ☑ Insured    ☐ Employer of Insured (Not available for owners of businesses classified as a sole proprietorship, partnership, or S Corporation)    ☐ Insured within a Pre-Tax/Sec 125 Plan

(b) Frequency of billing: ☑ Annually   ☐ Semiannually   ☐ Quarterly   ☐ Monthly (List Bill or ABC only)

(c) Method of billing: ☑ Direct   ☐ ABC (Monthly)   ☐ List Bill   Current Account No* _____
*(For new account complete appropriate form)

(d) Discounts: ☐ List Bill   ☐ Association   ☐ Dual

21. Money submitted with application? ☐ Yes   ☑ No

Plan 1 $_____    Plan 2 $_____    Plan 3 $_____
(Show only money submitted for plans applied for with this application)

22. Beneficiary (Give full name, relationship, date of birth, and Social Security or Tax ID Number.)

23.    Special Requests

exam copy, blood slip, 21025 form enclosed

Home Office Endorsements

DUPLICATE

FROM : EMSI/PROFILES BALTIMORE        PHONE NO. : 410 321 9443        P02

**PROVIDENT LIFE AND ACCIDENT**
INSURANCE COMPANY

PART II
ANSWERS MADE TO EXAMINER
IN CONTINUATION OF THE APPLICATION FOR INSURANCE TO
PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Chattanooga, Tennessee 37402

Full Name of Person Examined (Last) DRAZIN    (First) STEPHEN    (Middle) A.    Date of Birth 10-8-67    Occupation Attorney

1. a. Name and address of your personal physician (If none, ☐ Check) ☐   Columbia Medical Plan 2 Krill Nort. Cr.

b. Date and reason last consulted: 1988 Check up    Columbia MD 21045

c. What treatment was given or medication prescribed? NONE

2. Have you ever been treated for or ever had any known indication of:

| | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☑ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☑ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☑ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☑ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☑ |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? | ☐ | ☑ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☑ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☑ |
| i. Deformity, lameness or amputation? | ☐ | ☑ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☑ |
| k. Allergies; anemia, hemophilia or leukemia? | ☐ | ☑ |

| | Yes | No |
|---|---|---|
| 3. Are you now under observation or taking treatment? | ☐ | ☑ |
| 4. Have you had any change in weight in the past year? | ☐ | ☑ |
| 5. Other than above, have you within the past 5 years: | | |
| a. Had any mental or physical disorder not listed above? | ☑ | ☐ |
| b. Had a checkup, consultation, illness, injury, surgery? | ☑ | ☐ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☑ | ☐ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☑ | ☐ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☑ |
| 6. Have you ever used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? | ☐ | ☑ |
| 7. Have you ever sought help or treatment for alcohol use? | ☐ | ☑ |
| 8. a. Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? | ☐ | ☑ |
| b. To the best of your knowledge and belief, are you now pregnant? N/A | ☐ | ☐ |
| 9. Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☑ |
| 10. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? | ☐ | ☑ |
| 11. Family History: (Father, Mother, Brothers, Sisters) Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? | ☐ | ☑ |

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

D625 781.67.368.0 Ft
4.93
(5A) Auto accident on
a wave runner.
Cut @ leg. Required
2 sutures. Hosp.
X 5 days. Physician
unknown. Boca
Raton Community
Hosp. Boca Raton, 7
Treated c IV anti
biotics during
hospitalization.
(5C) See (5A)
(5D) Xray of @ leg.
Blood profile. Xray
Neg for fracture
See (5A).

(For additional comments, use back side)

| a. | Age if Living? | Age at Death? | Cause of Death | b. | Number Living? | Dead? | Age if Living? | Age at Death? | Cause of Death |
|---|---|---|---|---|---|---|---|---|---|
| Father | 59 | | | Brothers | 0 | 0 | | | |
| Mother | 54 | | | Sisters | 3 | 0 | 36,33,25 | | |

The foregoing statements are full, complete, and true to the best of my knowledge and belief.    Dated at Columbia, MD this 19TH day of April 19 94

PARAMEDICAL ORGANIZATION (Please stamp or type below)

EXAMINATION MANAGEMENT SERVICE, INC.
800 E. JOPPA RD. (STE 407)
TOWSON, MD 21204    DUPLICATE

(X) _____

Signature of person examined



## AGREEMENT

I understand and agree that:

1. This application is made up of Part One and, if required by the Company, Part Two. The application, any policy issued as a result of it, and any papers attached to the policy by the Company, will form the whole contract of insurance.

2. Only an officer of the Company may make or alter contracts, accept risks, or waive any of its rights or requirements. No agent, broker, or medical examiner may do this.

3. I have read the statements and answers in this application. To the best of my knowledge and belief, they are true, complete, and correctly stated. They will be the basis for any policy issued based on this application.

4. Acceptance of the policy will mean acceptance of its terms and ratification of any changes noted in the "Home Office Endorsements" section. The following changes must be agreed to by me in writing: age at issue; plan or amount of insurance; premium; classification of risks; or added benefits.

5. Unless the insurance as set out in the Conditional Receipt becomes effective, the Company will incur no liability until: (a) any policy applied for has been delivered to and accepted by me; and (b) the first premium is paid. When I accept the policy, the health or any other factor affecting the insurability of the person for whom application for insurance is being made must be the same as represented in this application, otherwise the policy will not be a valid contract.

6. I have received the Conditional Receipt if money was submitted with this application. I have read the Conditional Receipt and agree to its terms, conditions, and limits. They have been fully explained to me by the Agent or Broker.

## AUTHORIZATION

I, the Proposed Insured, authorize:

1. The disclosure of relevant information about me for the purpose of determining eligibility for insurance including, but not limited to, medical, AIDS, mental disorders, and my driving history.

2. The following to disclose such information: any physician, medical professional, hospital, clinic, or other medical or medically related facility, insurance or reinsurance company, consumer reporting agency, other insurance support organizations, employer, the Medical Information Bureau, Inc., or any other person, organization, or institution that has any records or knowledge of me or my health. They may disclose such information to The Lincoln National Life Insurance Company, its reinsurers, and any agents, attorneys, or insurance support organizations acting on its behalf.

I understand that The Lincoln National Life Insurance Company may release this information to its reinsuring companies, and may make a brief report to the Medical Information Bureau, Inc. I agree that this Authorization will be valid for two years and six months from the date shown below, and that a photographic copy of it will be as valid as the original. I know that I may receive a copy of this Authorization upon request.

I acknowledge that I have received the Investigative Consumer Reports Notice, the Privacy Notice, and the Important Notice attached to this application.

Signed at _Columbia_ _Md._ on _6/11/94_
    City          State               Date

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured and/or Applicant.

X _Michael Braham_       X _____
Signature of Agent or Broker     ACF #         Signature of Applicant
                                     (If other than Proposed Insured)

